[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-14488

Non-Argument Calendar

_____

HELAL MOHAMMAD,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A203-653-973

_____

Before WILSON, JORDAN, and BLACK, Circuit Judges.

PER CURIAM:

Helal Mohammad, a native and citizen of Bangladesh, seeks review of the Board of Immigration Appeals' (BIA) final order affirming the immigration judge's (IJ) denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT). After review,[1] we deny the petition.

## I. ASYLUM AND WITHHOLDING OF REMOVAL

As to his asylum and withholding of removal claims, Mohammad asserts the IJ clearly erred in finding he was only partially credible. He contends he showed past persecution and an objectively reasonable fear of future persecution. Mohammad also

---

[1] We review the IJ's opinion to the extent the BIA has found the IJ's reasons were supported by the record and review the BIA's decision with regard to those matters on which it rendered its own opinion and reasoning. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011). We review conclusions of law *de novo* and factual determinations under the substantial evidence test. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). Under the highly deferential substantial evidence test, we must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (*en banc*) (quotation marks omitted).

asserts the IJ erred in concluding it was reasonable for him to relocate within Bangladesh.

## A. Credibility

"The asylum applicant must establish eligibility for asylum by offering credible, direct, and specific evidence in the record." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005) (quotation marks omitted). If found to be credible, an applicant's testimony may be sufficient on its own to establish the burden of proof for asylum or withholding of removal. *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818–19 (11th Cir. 2004). However, even if an IJ makes an adverse credibility finding, the IJ has a duty to consider other evidence produced by an asylum applicant. *Forgue*, 401 F.3d at 1287. A credibility determination may be based on the totality of the circumstances, including: (1) the demeanor, candor, and responsiveness of the applicant; (2) the plausibility of the applicant's account; (3) the consistency between the applicant's written and oral statements; (4) the internal consistency of each statement; (5) the consistency of the applicant's statements with other record evidence, including country reports; and (6) any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. 8 U.S.C. § 1158(b)(1)(B)(iii).

The IJ specifically found implausible and not credible Mohammad's testimony that his low-level involvement in the Liberal Democratic Party (LDP) would escalate from being twice beaten

for his affiliation with the party to being threatened with decapitation after leaving Bangladesh, which was not supported by the country condition documents.  Substantial evidence supports the finding Mohammad was not credible with respect to the threat of beheading.  The IJ provided "specific, cogent" reasons in finding Mohammad's testimony about the threat was not credible, namely that it was not plausible the threats against Mohammad, a low-level LDP member, would escalate from minor beatings to decapitation. *See Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1231 (11th Cir. 2006) (stating the IJ must offer "specific, cogent" reasons for an adverse credibility finding).  Moreover, the IJ found Mohammad's corroborative evidence was not reliable, and substantial evidence supports this finding.  Mohammad testified he was a "general worker" for the LDP that attended rallies and meetings, helped set up chairs and tables, and make announcements.  While Mohammad included a handwritten supplement to his affidavit and his mother's supplemental affidavit that detailed the threats of beheading made to his mother, he testified the Awami League members had not threatened him since he left Bangladesh and that, while they continued to come to his mother's house, they had "scolded" her. When asked by the IJ why the Awami League members would escalate from beatings to beheading, he testified there was a "chance" they would do so because they had threatened him before.  Thus, viewing the evidence in the light most favorable to the IJ's finding and drawing all reasonable inferences in favor of that finding, the record does not compel reversal of the findings that Mohammad's account was not plausible in light of his role as a low-level member

20-14488                Opinion of the Court                5

in the LDP, his corroborative evidence was not reliable, and his de-
meanor was unsure and nervous, and therefore, he was only par-
tially credible.  8 U.S.C. § 1158(b)(1)(B)(iii); *Adefemi v. Ashcroft*,
386 F.3d 1022, 1027 (11th Cir. 2004)  (*en banc*) (stating we view the
evidence in the light most favorable to the agency's decision and
draw all reasonable inferences in favor of that decision); *Kueviakoe
v. U.S. Att'y Gen.*, 567 F.3d 1301, 1304 (11th Cir. 2009) (explaining
under the substantial evidence test, a decision "can be reversed
only if the evidence 'compels' a reasonable fact finder to find oth-
erwise" (quotation marks omitted)).

## B.  Persecution

The Attorney General may grant asylum to an alien who
meets the definition of a "refugee."  8 U.S.C. § 1158(b)(1)(A).  A
refugee is defined as—

> any person who is outside any country of such per-
> son's nationality . . . and who is unable or unwilling
> to return to, and is unable or unwilling to avail him-
> self or herself of the protection of, that country be-
> cause of persecution or a well-founded fear of perse-
> cution on account of race, religion, nationality, mem-
> bership in a particular social group, or political opin-
> ion.

8 U.S.C. § 1101(a)(42)(A).  The applicant bears the burden of prov-
ing that he is a refugee.  8 U.S.C. § 1158(b)(1)(B)(i).  The applicant
must demonstrate he (1) was persecuted in the past on account of
a  protected  ground  or  (2) has  a  well-founded  fear  he  will  be

persecuted in the future on account of a protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). To establish a well-founded fear of future persecution, the applicant must show a reasonable possibility he will be singled out for persecution on account of a protected ground and his fear is both "subjectively genuine and objectively reasonable." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1352 (11th Cir. 2009) (quotation marks omitted). However, an applicant does not have a well-founded fear of future persecution if he could "avoid persecution by relocating to another part of the applicant's [home] country," where such relocation is reasonable. 8 C.F.R. § 1208.13(b)(2)(ii); *see also Arboleda v. U.S. Att'y Gen.*, 434 F.3d 1220, 1223 (11th Cir. 2006) (noting we have upheld the "country-wide" requirement). Where an applicant has not established past persecution, the burden is on the applicant to show he could not avoid persecution by relocating in his home country. 8 C.F.R. § 1208.13(b)(3)(i).

Persecution is an "extreme concept" that requires more than mere harassment or "a few isolated incidents of verbal harassment or intimidation." *Kazemzadeh*, 577 F.3d at 1353 (quotation marks omitted). We have found that minor physical abuse and brief detentions do not amount to persecution. *Id.* Serious physical injury is not required to prove past persecution where the petitioner demonstrates repeated threats combined with other forms of serious mistreatment. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1009 (11th Cir. 2008). Yet a minor beating, even when viewed in

conjunction with threats, does not compel a finding of persecution. *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir. 2008).

In *Kazemzadeh*, we held the record did not compel a finding the petitioner was persecuted when he testified he was arrested, interrogated, and beaten for five hours, and detained for four days but did not prove he suffered any physical harm. *Kazemzadeh*, 577 F.3d at 1353. In *Djonda*, we held the petitioner did not establish past persecution when he was detained at a police station for 36 hours, forced to disrobe, beaten with a belt, and kicked, threatened that he "was going to rot in jail" if arrested again, suffered multiple scratches to his neck and knees and multiple muscle bruises, and received medical treatment requiring 2 weeks of rest and several medical prescriptions. *Djonda*, 514 F.3d at 1171, 1174 (quotation marks omitted). By contrast, in *De Santamaria*, we held the petitioner suffered past persecution when her life was repeatedly threatened by members of a paramilitary organization over two years; she was yanked by the hair out of her vehicle and specifically threatened with death; her family groundskeeper was tortured and killed for not revealing her whereabouts; and she was ultimately beaten, kidnapped, and warned of her imminent murder. *De Santamaria*, 525 F.3d at 1009. In *Diallo*, we held that, while the petitioner's minor beating and detention for 11 hours, by itself, would not compel reversal, he established past persecution when he was also threatened with death by the same soldiers who had already killed his brother. *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1333 (11th Cir. 2010).

Substantial evidence supports the BIA's findings that Mohammad failed to demonstrate past persecution.  First, substantial evidence supports the findings of the BIA and IJ that the harm Mohammad suffered did not rise to the level of past persecution.  Mohammad testified he had been beaten twice by several men, resulting in cuts and bruises that were treated by a doctor with bandages and medication, as indicated by the doctors' letters, and that, on both occasions, he was released the same day.  Yet, this Court has found a similar beating, accompanied with threats, that required comparable medical attention did not constitute past persecution. *See Djonda*, 514 F.3d at 1174.  Thus, the record does not compel the reversal of the findings of the IJ and BIA that the beatings were not sufficiently severe to satisfy the "extreme concept" of past persecution. *Kazemzadeh*, 577 F.3d at 1353; *Kueviakoe*, 567 F.3d at 1304.

Moreover, substantial evidence supports the findings of the IJ and BIA that Mohammad did not establish a well-founded fear of future persecution because it was not objectively reasonable.  The BIA and IJ found Mohammad's fear as a low-level LDP member was not objectively reasonable, in light of the country conditions, and that he had not shown he would be singled out for persecution, as there was no objective evidence the Awami League members were actively seeking to harm him.  The State Department's Human Rights Report provided by Mohammad made no mention of the Awami League's treatment of the LDP.  And Mohammad testified the Awami League members did not harm or threaten him

after he left the village and then left for the United States.  Thus, the Human Rights Report did not show that Mohammad, as a low-level LDP member,  would be singled out for persecution, and Mohammad failed to provide credible evidence the men who attacked him were still looking for him.  Viewing the evidence in the light most favorable to the IJ's finding and drawing all reasonable inferences in the agency's favor, the record does not compel reversal of the finding that Mohammad's well-founded fear of future persecution was not objectively reasonable.

Further, substantial evidence supports the finding of the BIA and IJ that Mohammad could reasonably relocate in Bangladesh. Mohammad testified the attacks occurred within his village and that, when he was in hiding outside the village, he was not harmed or threatened.  And Mohammad provided no evidence the Awami League members from his village would be able to harm him elsewhere in Bangladesh.  Thus, viewing the evidence in the light most favorable to the IJ's finding and drawing all reasonable inferences in the agency's favor, the record does not compel reversal of the IJ's finding that Mohammad did not demonstrate he could not reasonably relocate within Bangladesh.

Accordingly, substantial evidence supports the finding that Mohammad did not experience past persecution and did not have

a well-founded fear of future persecution and, thus, was not eligible for asylum or withholding of removal.[2]

## II.  CAT RELIEF

As to CAT relief, Mohammad contends the record showed it was more likely than not that he would be tortured if returned to Bangladesh.  An applicant seeking protection under CAT must establish it is more likely than not he would be tortured if removed to the proposed country of removal.  *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004).  Additionally, the individual must show the torture would be by or with the acquiescence of the government.  *Id.*  "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture."  8 C.F.R. § 208.18(a)(2).  "[T]o constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering."  *Id.* § 208.18(a)(5).

Substantial evidence supports the BIA's finding that Mohammad failed to establish it was more likely than not he would be subjected to torture if removed to Bangladesh.  The BIA and the IJ

---

[2] To qualify for withholding of removal, an individual must show that, if returned to his country, his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1231(b)(3).  If a petitioner is unable to meet the standard of proof for asylum, he cannot meet the more stringent standard for withholding of removal.  *D-Muhumed.*, 388 F.3d at 819.

found no evidence of past torture. Though Mohammad testified he was twice beaten, resulting in cuts and bruises that were treated by bandages and medication, he was able to leave his doctors' care the same day. Thus, viewing the evidence in the light most favorable to the IJ's finding and drawing all reasonable inferences in favor of that finding, the record supports the IJ's finding Mohammad was not subjected to an extreme form of cruel and inhuman treatment to constitute past torture. Moreover, Mohammad testified the attacks occurred within his village and that, when he was in hiding outside the village, he was not harmed or threatened. Thus, the record does not compel reversing the finding of the IJ and BIA that Mohammad failed to establish anyone was seeking to harm him after he left the village. Plus, as discussed above, the record supported the finding that Mohammad could relocate within Bangladesh to avoid being harmed and the country conditions report did not mention the mistreatment of LDP members in Bangladesh. 8 C.F.R. § 208.16(c)(3)(ii).

Accordingly, we deny Mohammad's petition for review.

**PETITION DENIED.**